J. A29013/15 & J. A29014/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  R.-J.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  R.-J.K., A MINOR, | : | No. 942 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered May 12, 2015,
in the Court of Common Pleas of Allegheny County
Orphans' Court Division at No. CP-02-AP-0000032-2015

| | | |
|---|---|---|
| IN RE:  L.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  L.K., | : | No. 944 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered May 12, 2015,
in the Court of Common Pleas of Allegheny County
Orphans' Court Division at No. CP-02-AP-0000033-2015

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED DECEMBER 22, 2015**

R.-J.K., a male child, and L.K., a female child, through their guardian

*ad litem* ("GAL"), appeal from the orders in the Court of Common Pleas of

Allegheny County denying the petitions for the involuntary termination of the

parental rights of R.K. ("Father"), filed by the Allegheny County Office of Children, Youth and Families ("CYF"). Upon careful review, we affirm.[1]

Father and Mother are the natural parents of R.-J.K., born in November of 2010, and L.K., born in October of 2011 (collectively, "the Children"). Mother has an older son, E.H., the Children's half-brother, born in December of 2007, who is not a subject of the instant appeals.

On February 4, 2015, CYF filed petitions for the involuntary termination of the parental rights of Father and Mother pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). A hearing on the petitions occurred on April 10, 2015, during which CYF presented the testimony of its caseworker, Sharon Martin, and Neil Rosenblum, Ph.D., who performed psychological evaluations of Father, Mother, R.-J.K., and L.K. Father testified on his own behalf, and he presented the testimony of David Richardson, the program director at the Center for Family Excellence. In addition, Mother testified on her own behalf.

In its opinion pursuant to Pa.R.A.P. 1925(a), the orphans' court explained that it found the testimony of the CYF caseworker, Ms. Martin, "to be confusing, lacked an understanding of the necessary chronological order in delivering pertinent information and didn't have a working knowledge of dates that were crucial to the understanding of this case for this [c]ourt's

---

[1] In separate orders, the orphans' court granted CYF's petitions for the involuntary termination of the parental rights of R.H. ("Mother"). Mother filed notices of appeal, the disposition of which is by separate memorandum.

satisfaction." (Trial court opinion, 7/10/15 at 4.) In addition, the court explained that it "multiple times [] had to ask its own questions as to dates and goals satisfied as it related to potential setbacks that were crucial to an understanding[,] and often the [c]ourt was left with equivocal answers shading clarity." (*Id.*)

With this background in mind, the orphans' court set forth the factual history of this case, which the testimonial evidence supports. We summarize as follows. CYF first became involved with this family as a result of allegations by Mother that Father hit Mother's son, E.H., in the ear, causing it to bleed. (*Id.* at 4.) Father admitted to hitting E.H. (*Id.*) Nevertheless, CYF allowed E.H. to remain in the home with Mother and Father, and "[n]o further abuse of E.H. was ever alleged." (*Id.*)

Thereafter, on November 29, 2011, Father was charged with a crime involving domestic violence against Mother, and he pleaded guilty to harassment and disorderly conduct on June 12, 2012. (*Id.*) Father received a sentence of one year of probation, and he was ordered to attend anger management classes and to have no violent contact with Mother. (*Id.*) Father successfully completed his probation.

On February 12, 2013, Mother resided with a new paramour, with whom she left the Children when she reported to the Allegheny County jail.[2]

---

[2] Mother testified on cross-examination by counsel for CYF that she was incarcerated for "[a] speeding ticket that turned into a warrant." (Notes of testimony, 4/10/15 at 135.)

(*Id.* at 5.) Mother's paramour subsequently placed the Children with their maternal grandmother. (*Id.*) Mother was released from jail eight days later, on February 20, 2013, and she told CYF that she was not ready to resume care of the Children. (*Id.*) On March 6, 2013, the Children were adjudicated dependent, and they were placed in kinship foster care with their maternal aunt.[3] (*Id.*)

CYF established the following Family Service Plan ("FSP") goals for Father: to gain and maintain sobriety; to stabilize mental health; to eliminate verbal and physical family abuse; to obtain and maintain appropriate housing; to participate in a parenting program; to maintain appropriate employment; and to maintain contact and cooperation with CYF. (Notes of testimony, 4/10/15 at 25.) In addition, CYF arranged three-hour weekly supervised visits between Father and the Children. (*Id.* at 36.)

By orders dated May 12, 2015, the orphans' court denied CYF's petition for the involuntary termination of Father's parental rights to the Children. The orphans' court accompanied the subject orders with 19 findings of fact. On June 17, 2015, the GAL filed notices of appeal and concise statements of errors complained of on appeal pursuant to

---

[3] E.H. was adjudicated dependent on August 10, 2012, but he was not removed from parental custody until March 6, 2013, at which time he was also placed in kinship care with the maternal aunt. (Trial court opinion, 7/10/15 at 4-5.)

Pa.R.A.P. 1925(a)(2)(i) and (b).[4]  The orphans' court filed its Rule 1925(a)

opinion on July 10, 2015.

On appeal, the GAL presents the following issues for our review:

I.      Whether the [orphans'] court abused its discretion and/or erred as a matter of law in denying the petition to involuntarily terminate [] Father's parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(8) after the statutory grounds for termination were proven by clear and convincing evidence?

II.     Whether the [orphans'] court abused its discretion and/or erred as a matter of law in concluding that the involuntary termination of Father's parental rights would not best meet the developmental, physical, and emotional needs and welfare of the Children pursuant to 23 Pa.C.S.[A.] § 2511(b)?

GAL's brief at 7.[5]

---

[4] A notice of appeal must be filed within 30 days after entry of the order from which the appeal is taken.  **See** Pa.R.A.P. 903(a).  Rule 108(b) provides that the date of entry of an order is "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)".  Pa.R.A.P. 108(b).  In this case, there is no date of entry on the certified docket of the subject orders.  As such, the appeal period has not been triggered, and, therefore, the GAL's appeals are timely.  **See In re L.M.**, 923 A.2d 505 (Pa.Super. 2007) (declining to quash appeal as untimely where the docket does not show that notice of entry of involuntary termination of parental rights order was given).

[5] CYF filed a brief on appeal, which it designated as an "appellee brief." However, like the GAL, CYF argues in its brief that the orphans' court erred in failing to terminate Father's parental rights pursuant to Section 2511(a)(8) and (b).

We consider the GAL's issues mindful of our well-settled standard of review.

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and

> the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

Instantly, CYF petitioned for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

>        (8)   The child has been removed from
>              the care of the parent by the court
>              or under a voluntary agreement
>              with an agency, 12 months or
>              more have elapsed from the date
>              of removal or placement, the
>              conditions which led to the removal
>              or placement of the child continue
>              to exist and termination of parental
>              rights would best serve the needs
>              and welfare of the child.
>
>   **(b)   Other    considerations.--**The    court    in
>           terminating the rights of a parent shall give
>           primary consideration to the developmental,
>           physical and emotional needs and welfare of
>           the child.  The rights of a parent shall not be
>           terminated    solely    on    the    basis    of
>           environmental factors such as inadequate
>           housing, furnishings, income, clothing and
>           medical care if found to be beyond the control
>           of the parent.  With respect to any petition
>           filed pursuant to subsection (a)(1), (6) or (8),
>           the court shall not consider any efforts by the
>           parent to remedy the conditions described
>           therein which are first initiated subsequent to
>           the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1),(2), (5), (8), (b).

On appeal, the GAL argues that the orphans' court abused its discretion or committed an error of law in denying CYF's petitions pursuant to Section 2511(a)(8) and (b).  To terminate parental rights pursuant to Section 2511(a)(8), the following factors must be demonstrated:  (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best

serve the needs and welfare of the child. ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275-1276 (Pa.Super. 2003); 23 Pa.C.S.A. § 2511(a)(8).

"Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." ***In re A.R.***, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of CYS supplied over a realistic time period. ***Id.*** Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of CYS services. ***In re Adoption of T.B.B.***, 835 A.2d 387, 396 (Pa.Super. 2003); ***In re Adoption of M.E.P., supra***.

With respect to Section 2511(b), this court has described the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***Id***. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists.

> *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010).

Regarding the "needs and welfare" analysis pertinent to Sections 2511(a)(8) and (b), we have observed:

> [I]nitially, the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child. However, Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on the "developmental, physical and emotional needs and welfare of the child." Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent. Moreover, only if a court determines that the parent's conduct warrants termination of his or her parental rights, pursuant to Section 2511(a), does a court "engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." Accordingly, while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa.Super. 2008) (*en banc*) (citations omitted).

With respect to the first issue in this appeal, the GAL asserts that the Children have been removed from their parents since February 14, 2013, or

- 11 -

for 25 months, far in excess of the 12-month statutory minimum. Therefore, the GAL argues that the first factor of Section 2511(a)(8) is satisfied. Likewise, CYF argues that the first factor is satisfied as the Children have been removed for more than 12 months.

With respect to the second factor, whether the conditions that led to the Children's removal continue to exist, the GAL asserts that Father "continues to display frustration, irritability[,] and impatience with the Children." (GAL's brief at 17.) Further, the GAL, as does CYF, argues that the orphans' court erred in failing to terminate Father's parental rights because he "had 'substantially' completed his FSP [goals]. . . ." (***Id.*** at 17-18.)

In essence, the GAL and CYF disagree with the orphans' court's factual finding that accompanied the subject orders, as follows, in pertinent part:

> [Father] has substantially completed his Family Service Plan. [Father]'s primary problem was alleged to have been domestic issues. [Father] was convicted of Harassment and sentenced to 1 year of probation to have commenced June 12, 2012. As a result of his conviction, [Father] was ordered into anger management as part of his sentence. No other issues related to domestic violence or parental issues have concerned this court. On April 1, 2013, [Father] participated in individual psychotherapy through Mercy Behavioral Health on a weekly basis. As of November 4, 2013, his therapist reported he had "no symptoms of mental health and didn't require further treatment." That therapist reported that [Father] continued to be involved in treatment because he felt he gained insight into relationship issues into the dynamics involving his children and their mother. In July of 2014, [Father] became a

> client of Pittsburgh Community Services Inc. His goal was to get training and a job. [Father] has provided evidence of employment and has a management position. [Father] is a client of Center For Family Excellence and the [c]oordinator, David Richardson[,] testified to the eagerness and commitment of [Father]. [Father] has provided evidence of his attempt to get housing with the Housing of the City of Pittsburgh. He is in a "catch 22" because he is unable to get assistance with housing for . . . the children without having the children returned to him.

Order, 5/12/15 at Finding of Fact #16. Significantly, in its Rule 1925(a) opinion, the orphans' court clarified that it found Father had "satisfied his goals[,] and that he was ready to parent [the Children]." (Trial court opinion, 7/10/15 at 7-8.)

With respect to the third factor, the needs and welfare of the Children, the GAL asserts that the orphans' court abused its discretion in finding the existence of a strong bond between the Children and Father and in failing to follow the recommendation of Dr. Rosenblum that the goal for the Children be adoption. In addition, CYF argues that the Children's kinship foster parents can best serve their needs and welfare.

Upon careful review, we conclude that the orphans' court did not err as a matter of law because Section 2511(a)(8), along with Section 2511(a)(5), is "predicated on removal of the child from the care of the parent. . . ." *In re C.S.*, 761 A.2d 1197, 1200 n.5 (Pa.Super. 2000) (*en banc*). In *In re C.S.*, this court held that Section 2511(a)(5) and (8) did not provide a basis for terminating the father's parental rights when he was incarcerated

at the time of the child's removal from the mother's care. Likewise, in

***In re Z.P.***, 994 A.2d 1108 (Pa.Super. 2010), this court, in accordance with

***In re C.S.***, ***supra***, concluded that Section 2511(a)(5) and (8) did not

provide a basis for terminating the father's parental rights when he was

incarcerated at the time of the child's placement.

In this case, the CYF caseworker, Ms. Martin, testified that the

Children were living with Mother and her new paramour, but not Father, at

the time of their removal. (Notes of testimony, 4/10/15 at 11-13.)

Therefore, the Children were not removed from Father's care. Based on the

foregoing case law, we conclude that Section 2511(a)(8) is inapplicable in

this matter.[6] [7] As such, the GAL's first issue on appeal fails.[8] It follows that

---

[6] We recognize that the orphans' court denied the petitions for the involuntary termination of Father's parental rights under Section 2511(a)(8) on a different basis; namely, that he has satisfied the conditions that led to the Children's placement, and that he is ready to parent the Children. However, this court is "not bound by the orphans' court's rationale, and may affirm its ruling on any basis." ***See Brickman Group Ltd. v. CGU Ins. Co***., 865 A.2d 918, 928 (Pa.Super. 2004); ***see also Ario v. Ingram Micro, Inc.***, 965 A.2d 1194, 1200 (Pa. 2009) (same).

[7] For the same reason, Section 2511(a)(5) is inapplicable in this case.

[8] Because the GAL does not challenge the subject orders with respect to Section 2511(a)(1) or (2), we need not review the orders under those subsections. Nevertheless, we have carefully reviewed the testimonial evidence in this case and the rationale of the orphans' court set forth in its Rule 1925(a) opinion. We discern no abuse of discretion by the court. ***See In re Adoption of S.P.***, ***supra*** (explaining that, "even where the facts could support an opposite result . . . an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead, we must defer to the trial judges so long as the

we need not consider the GAL's second issue regarding Section 2511(b). *See In re L.M.*, *supra* (explaining that, "[o]nly if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b)"). Accordingly, we affirm the orders denying CYF's petitions for the involuntary termination of Father's parental rights.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2015

---

factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion").